UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW MEXICO

In re:
ANTHONY C. SALCIDO,
    Debtor.                                No. 7-09-12279 SA

PHILIP J. MONTOYA,
    Plaintiff,
v.                                              Adv. No. 10-1166 S

TAMI PACHECO and
DESERT OASIS RECOVERY, LLC.
    Defendant.

**MEMORANDUM OPINION ON
CROSS-MOTIONS FOR SUMMARY JUDGMENT**

    This matter is before the Court on cross-motions for summary judgment[1]. Plaintiff appears through his attorney Moore, Berkson & Gandarilla, P.C. (George M. Moore and Bonnie Gandarilla). Defendants appear through their attorney Hunt & Davis, P.C. (Chris W. Pierce). This adversary proceeding is captioned "Trustee's Complaint for Turnover, to Recover Fraudulent Transfers and to Recover Post Petition Transfers of Property of the Estate." Doc 1. Defendants filed an answer, asserted ten affirmative defenses and counter-claimed for setoff. Doc 4. Trustee answered the counter-claim. Doc 8. Defendants filed their Motion for Summary Judgment (doc 17) with the accompanying Affidavit of Tami Pacheco (doc 18). Plaintiff responded and filed a Cross-motion for Summary Judgment with Memorandum and the

---

    [1]The Court has subject matter and personal jurisdiction pursuant to 28 U.S.C. §§1334 and 157(b); this is a core proceeding pursuant to 28 U.S.C. §§157(b)(2)(A), (B) and/or (O); and these are findings of fact and conclusions of law as may be required by Rule 7052 F.R.B.P.

attached affidavit of Anthony C. Salcido, the Debtor (doc 20).
For the reasons set forth below, the Court will grant Defendants'
Motion for Summary Judgment in part and deny Plaintiff's Cross-
Motion for Summary Judgment.

## SUMMARY JUDGMENT

In adversary proceedings Summary Judgment is governed by
Fed.R.Bankr.P. 7056, which incorporates Fed.R.Civ.P. 56, which in
turn provides, in relevant part:

> **Rule 56. Summary Judgment**
> **(a) Motion for Summary Judgment or Partial Summary
> Judgment.** A party may move for summary judgment,
> identifying each claim or defense--or the part of each
> claim or defense--on which summary judgment is sought.
> The court shall grant summary judgment if the movant
> shows that there is no genuine dispute as to any
> material fact and the movant is entitled to judgment as
> a matter of law. The court should state on the record
> the reasons for granting or denying the motion.
> **(b)** ...
> **(c) Procedures.**
> (1) Supporting Factual Positions. A party asserting
> that a fact cannot be or is genuinely disputed must
> support the assertion by:
>> (A) citing to particular parts of materials in the
>> record, including depositions, documents,
>> electronically stored information, affidavits or
>> declarations, stipulations (including those made
>> for purposes of the motion only), admissions,
>> interrogatory answers, or other materials; or
>> (B) showing that the materials cited do not
>> establish the absence or presence of a genuine
>> dispute, or that an adverse party cannot produce
>> admissible evidence to support the fact.
> (2) Objection That a Fact Is Not Supported by
> Admissible Evidence. A party may object that the
> material cited to support or dispute a fact cannot be
> presented in a form that would be admissible in
> evidence.

Case 10-01166-t   Doc 23   Filed 09/07/12   Entered 09/07/12 10:44:37 Page 2 of 29

(3) Materials Not Cited.  The court need consider only the cited materials, but it may consider other materials in the record.

(4) Affidavits or Declarations.  An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

**(d) ...**

**(e) Failing to Properly Support or Address a Fact.**  If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:

(1) give an opportunity to properly support or address the fact;

(2) consider the fact undisputed for purposes of the motion;

(3) grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it; or

(4) issue any other appropriate order.

**(f) ...**

**(g) Failing to Grant All the Requested Relief.**  If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact--including an item of damages or other relief--that is not genuinely in dispute and treating the fact as established in the case.

Fed.R.Civ.P. 56.[2]  Additionally, New Mexico Local Rule 7056-1

regulates the required procedure:

**SUMMARY JUDGMENT**

**(a)   Memoranda.**  The movant shall file with the motion a memorandum containing a  concise statement in support of the motion with a list of authorities.  A motion for summary judgment filed without a memorandum may be summarily denied.  A party opposing the motion shall, within 21 days after service of the motion, file a

---

[2]The version of Rule 56 quoted became effective on December 1, 2010.  See Fed. R. Civ. P. 56 (2010 Advisory Committee comments).  Material formerly contained in former Rule 56(c) now appears in rule 56(a).

Case 10-01166-t   Doc 23   Filed 09/07/12   Entered 09/07/12 10:44:37 Page 3 of 29

memorandum containing a concise statement in opposition
to the motion with a list of authorities.  If no
response is filed, the court may grant the motion.  The
movant may, within 14 days after the service of a
response, file a reply memorandum.

**(b)  Undisputed Facts.**  The memorandum in support of
the motion shall set out as its opening a concise
statement of all of the material facts as to which
movant contends no genuine issue exists.  The facts
shall be numbered and shall refer with particularity to
those portions of the record upon which movant relies.

**(c)  Disputed Facts.**  A memorandum in opposition to the
motion shall contain a concise statement of the
material facts as to which the party contends a genuine
issue does exist.  Each fact in dispute shall be
numbered, shall refer with particularity to those
portions of the record upon which the opposing party
relies, and shall state the number of the movant's fact
that is disputed.  All material facts set forth in
movant's statement that are properly supported shall be
deemed admitted unless specifically controverted.

NM LBR 7056-1.

The United States District Court for the District of New

Mexico recently presented a complete overview of the legal

standards for deciding Motions for Summary Judgment in the Tenth

Circuit:

Rule 56(c) states that summary judgment "should be
rendered if the pleadings, the discovery and disclosure
materials on file, and any affidavits show that there
is no genuine issue as to any material fact and that
the movant is entitled to judgment as a matter of law."
Fed.R.Civ.P. 56(c)(2).  The movant bears the initial
burden of "show[ing] that there is an absence of
evidence to support the nonmoving party's case."
Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d
887, 891 (10th Cir. 1991)(internal quotation marks
omitted).  See Celotex Corp. v. Catrett, 477 U.S. 317,
323 (1986)("Of course, a party seeking summary judgment
always bears the initial responsibility of informing
the district court of the basis for its motion, and

Page -4-

identifying those portions of the [record], together
with the affidavits, if any, which it believes
demonstrate the absence of a genuine issue of material
fact .") (internal quotation marks omitted).  Once the
movant meets this burden, rule 56(e) requires the
non-moving party to designate specific facts showing
that there is a genuine issue for trial.  <u>See</u> <u>Celotex
Corp. v. Catrett</u>, 477 U.S. at 324; <u>Anderson v. Liberty
Lobby, Inc.</u>, 477 U.S. 242, 256 (1986); <u>Vitkus v.
Beatrice Co.</u>, 11 F.3d 1535, 1539 (10th Cir. 1993)
("However, the nonmoving party may not rest on its
pleadings but must set forth specific facts showing
that there is a genuine issue for trial as to those
dispositive matters for which it carries the burden of
proof.")(internal quotation marks omitted).
     The party opposing a motion for summary judgment
must "set forth specific facts showing that there is a
genuine issue for trial as to those dispositive matters
for which it carries the burden of proof."  <u>Applied
Genetics Int'l, Inc. v. First Affiliated Secs., Inc.</u>,
912 F.2d 1238, 1241 (10th Cir. 1990).  Rule 56 provides
that "an opposing party may not rely merely on
allegations or denials in its own pleading; rather, its
response must—by affidavits or as otherwise provided in
this rule—set out specific facts showing a genuine
issue for trial."  Fed.R.Civ.P. 56(e)(2).  It is not
enough for the party opposing a properly supported
motion for summary judgment to "rest on mere
allegations or denials of his [or her] pleadings."
<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 256.  <u>See
Abercrombie v. City of Catoosa</u>, 896 F.2d 1228, 1231
(10th Cir. 1990); <u>Otteson v. United States</u>, 622 F.2d
516, 519 (10th Cir. 1980)( "However, 'once a properly
supported summary judgment motion is made, the opposing
party may not rest on the allegations contained in his
complaint, but must respond with specific facts showing
the existence of a genuine factual issue to be tried.'"
(citation omitted)).  Nor can a party "avoid summary
judgment by repeating conclusory opinions, allegations
unsupported by specific facts, or speculation."  <u>Colony
Nat'l Ins. Co. v. Omer</u>, No. 07-2123, 2008 WL 2309005,
at *1 (D. Kan. June 2, 2008)(citing Fed.R.Civ.P. 56(e)
and <u>Argo v. Blue Cross & Blue Shield of Kan., Inc.</u>, 452
F.3d 1193, 1199 (10th Cir. 2006)).  "In responding to a
motion for summary judgment, 'a party cannot rest on
ignorance of facts, on speculation, or on suspicion and
may not escape summary judgment in the mere hope that
something will turn up at trial.'"  <u>Colony Nat'l Ins.</u>

<u>Co. v. Omer</u>, 2008 WL 2309005, at *1 (quoting <u>Conaway v.</u> <u>Smith</u>, 853 F.2d 789, 794 (10th Cir. 1988)).

To survive summary judgment, genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." <u>Anderson v. Liberty Lobby,</u> <u>Inc.</u>, 477 U.S. at 250. A mere "scintilla" of evidence will not avoid summary judgment. <u>Vitkus v. Beatrice</u> <u>Co.</u>, 11 F.3d at 1539. Rather, there must be sufficient evidence on which the fact-finder could reasonably find for the nonmoving party. <u>See</u> <u>Anderson v. Liberty</u> <u>Lobby, Inc.</u>, 477 U.S. at 251 (quoting <u>Schuylkill &</u> <u>Dauphin Improv. Co. v. Munson</u>, 81 U.S. 442, 448 (1871)); <u>Vitkus v. Beatrice Co.</u>, 11 F.3d at 1539. "[T]here is no evidence for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable ... or is not significantly probative, ... summary judgment may be granted ." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 249 (internal citations omitted). Where a rational trier of fact, considering the record as a whole, could not find for the non-moving party, there is no genuine issue for trial. <u>See</u> <u>Matsushita Elec. Indus. Co. v.</u> <u>Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

When reviewing a motion for summary judgment, the court should keep in mind three principles. First, the court's role is not to weigh the evidence, but to assess the threshold issue whether a genuine issue exists as to material facts requiring a trial. <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 249. Second, the court must resolve all reasonable inferences and doubts in favor of the non-moving party and construe all evidence in the light most favorable to the non-moving party. <u>See</u> <u>Hunt v. Cromartie</u>, 526 U.S. 541, 550-55 (1999). Third, the court cannot decide any issues of credibility. <u>See</u> <u>Anderson v.</u> <u>Liberty Lobby, Inc.</u>, 477 U.S. at 255.

<u>Bhandari v. VHA Southwest Community Health Corp.</u>, 2011 WL 1336525

at *10-11 (D. N.M. 2011) (citing former Rule 56).

**<u>FACTS ADMITTED IN ANSWER TO COMPLAINT</u>**

C-1. This Court has jurisdiction over this adversary proceeding

pursuant to 28 U.S.C. §1334(a), 28 U.S.C. 157(b), and the

administrative order entered March 19, 1992, in the United States District Court for this district referring cases to this Court, in that this action is a core proceeding for turnover pursuant to 11 U.S.C. §542, or to avoid a fraudulent transfer pursuant to 11 U.S.C. §548, and to avoid post petition transfers pursuant to 11 U.S.C. §549.

C-2. Plaintiff is the duly appointed chapter seven trustee of the estate herein.

C-3. The Debtor herein filed a voluntary petition under chapter seven of the Bankruptcy Code on May 27, 2009.

C-4. On the date of the filing of the petition herein, Debtor claimed an interest in real property located at 6820 Kalgan NE, Rio Rancho, New Mexico, 87144.

C-5. During the year prior to the filing of the bankruptcy, Debtor rented the real property located at 6820 Kalgan NE to the Defendants pursuant to a rental agreement at the rate of $2,800.00 per month.

C-6. Defendants operated a residential rehabilitation center at the real property at all times relevant to the allegations set forth herein.

C-8. The Defendants continued to fail to pay the Debtor rent after the filing of the bankruptcy for approximately 13 more months, leaving an unpaid balance of approximately $36,400.00.

C-9. The Defendants continued to occupy the real property until at least June, 2010.

**DEFENDANTS' AFFIRMATIVE DEFENSES**

AFF-1. Plaintiff cannot recover because post-petition rents are not property of the estate.

AFF-2. Plaintiff cannot recover because the lease in question was not assumed post-petition, and therefore is rejected.

AFF-3. Plaintiff cannot recover because the rents are secured to the Mortgagee, or are the property of the Mortgagee. See In re Woodmere Investors Ltd Partnership, 178 B.R. 346 (Bankr. S.D.N.Y. 1995).

AFF-4. Plaintiff is not entitled to recover because any damages resulted from the actions of a third party or are the result of an independent intervening cause.

AFF-5. Plaintiff cannot recover because the Defendants are entitled to set off damages which fully offset any alleged claim.

AFF-6. Plaintiffs have not identified the date upon which certain allegations were alleged to have occurred. The Statute of Limitations prevents any recovery by the Plaintiff, to the extent that the Statute of Limitations expired with regard to any such allegations prior to the filing of an action.

AFF-7. Defendants do not know which, if any, affirmative defenses in addition to some of these above may apply. Defendants have neither knowingly nor intentionally waived any applicable

Case 10-01166-t    Doc 23    Filed 09/07/12    Entered 09/07/12 10:44:37 Page 8 of 29

affirmative defenses.  If Defendants later learn that additional affirmative defenses may apply, Defendants will seek leave to amend the answer to raise such other affirmative defenses.

AFF-8. Defendants lacked the necessary intent for Plaintiff to prevail.

AFF-9. The Debtor received a reasonably equivalent value, in that the Defendants improved and maintained the property, and otherwise benefitted the Debtor by their occupancy.

AFF-10.  No court authority was required for the Defendants to retain possession of the property, and Plaintiff cannot meet the elements of 11 U.S.C. Section 549.

**FACTS ADMITTED IN ANSWER TO COUNTER-CLAIM**

CC-1. Defendant Tami Pacheco is a resident of New Mexico.

CC-2. Defendant Desert Oasis Recovery, LLC is a New Mexico LLC.

CC-3. Plaintiff Philip J. Montoya is the Chapter 7 Trustee in the underlying Chapter 7 bankruptcy.

CC-4. This Court has jurisdiction to hear this matter, pursuant to 28 U.S.C. § 157 and 28 U.S.C. §1334.

CC-5. This is a core proceeding, pursuant to 28 U.S.C. §157(b).

CC-6. Venue is proper in this district pursuant to 28 U.S.C. §1409(a).

CC-7. Defendant agreed to pay monthly rent of $2,800 per month for the property at 6820 Kalgan NE, Rio Ranch, NM.

CC-8. Defendants rented the property for use as a rehabilitation center.

**UNDISPUTED FACTS IN DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

D-1. Defendant Tami Pacheco is a resident of New Mexico.

D-2. Defendant Desert Oasis Recovery, LLC is a New Mexico LLC.

D-3. Plaintiff Philip J. Montoya is the Chapter 7 Trustee in the underlying Chapter 7 bankruptcy.

D-4. This Court has jurisdiction to hear this matter, pursuant to 28 U.S.C. §157 and 28 U.S.C. §1334.

D-5. This is a core proceeding, pursuant to 28 U.S.C. §157(b).

D-6. Venue is proper in this district pursuant to 28 U.S.C. §1409(a).

D-7. Defendants entered into a verbal lease / purchase agreement with Anthony C. Salcido for the property known as 6820 Kalgan NE, Rio Rancho, NM 87144, for a monthly rent of $2,800.00 per month. Mr. Salcido informed Tami Pacheco of the underlying mortgage, and they agreed part of the rent money would go directly to pay the mortgage each month until the purchase was complete. Plaintiff agrees that Defendant Desert Oasis Recovery, LLC rented the real property located at 6820 Kalgan NE, Rio Rancho, NM for $2,800 per month, and that the parties discussed the amount of the underlying mortgage. Plaintiff argues that the remaining facts in paragraph 7 are not material; however, Plaintiff did not cite

Case 10-01166-t   Doc 23   Filed 09/07/12   Entered 09/07/12 10:44:37 Page 10 of 29

to contrary evidence in the record. Therefore, even if not relevant, paragraph 7 is deemed admitted.

D-8. This amount of rent was approximately twice the market value of rent for a similar property, because the additional rent was consideration for the lease/purchase of the property. Plaintiff disputes paragraph 8, but provides no contrary evidence. Paragraph 8 is deemed admitted.

D-9. Defendants rented the property for use as a rehabilitation center.

D-10. The lease between the Debtor and the Defendants was for residential real property.

D-11. The Debtor filed his petition on May 27, 2009.

D-12. The lease between the Debtor and the Defendants was never assumed.

D-13. DOR agreed to pay Mr. Salcido two months up front with a $200.00 water deposit.

D-14. On May 1, 2008, DOR gave Mr. Salcido a check in the amount of $5,800.00 per their agreement.

D-15. In order to obtain city and other approval for operation as a rehabilitation center, DOR was required to make significant modifications to the property, including installing a water suppression system which cost $9,890.00.

D-16. DOR also assumed the cost of installing phone lines,
utilities and the purchase of furniture and equipment for the
house.

D-17. In late August of 2008, Mr. Salcido called DOR and stated
that if DOR paid early, he would "knock" $50.00 off the rent, and
DOR agreed and did so.

D-18. From May 2008 through February 2009, DOR paid Anthony
Salcido every monthly payment per their agreement on time.
Attached to the Affidavit of Tami Pacheco as Exhibit A are true
and correct copies of the checks showing that DOR paid the Debtor
$5,600.00 by means of a check dated April 30, 2008, and paid
$2,800.00 for each month thereafter for the months of June
through December, 2008 and for the months of January and
February, 2009 (with the exception of the September 2008 payment,
which was in the amount of $2,750.00, as agreed).

D-19. From August of 2008 through February of 2008 [sic, 2009],
Anthony Salcido made requests or demands to get the rent payment
early, which caused Tami Pacheco concern that he was having
trouble making the mortgage payment. Tami Pacheco repeatedly
asked Anthony Salcido if the mortgage was in good standing and
requested proof, and he always assured her that it was.

D-20. On March 1, 2009, Mr. Salcido called Tami Pacheco and
demanded the lease payment, and Tami Pacheco again informed him
that he needed to produce proof that the mortgage was current.

D-21. Two days later, DOR received the first notice that the mortgage for the property was in default.

D-22. Tami Pacheco again asked Mr. Salcido to come over to the office and confronted him with the default notice.

D-23. Only then did Mr. Salcido admit that he had not paid the mortgage and had knowingly and purposefully taken the money that was paid to him for the mortgage and spent it.

D-24. Mr. Salcido admitted that he was "living off" the money instead of paying the mortgage.

D-25. As a result, DOR ceased paying the rent to Mr. Salcido because it was clear that the rent was not being used to pay the mortgage, in spite of the understanding of the parties. Tami Pacheco believed at that time that if anyone was entitled to the rent payment, it was the mortgage company. Plaintiff argues that paragraph 25 is not a fact, but a statement of opinion. The Court disagrees and finds that the first sentence is a deemed admitted fact. The Court agrees with Plaintiff that Ms. Pacheco's belief about entitlement to the rent is probably not relevant.

**UNDISPUTED FACTS IN PLAINTIFF'S COUNTER-MOTION FOR SUMMARY JUDGMENT**

P-10. Defendant Desert Oasis Recovery, LLC. ("Desert Oasis") continued to conduct business from the real property located at 6820 Kalgan NE, Rio Rancho, NM 87144 ("Real Property") without paying any rent from March, 2009, until at least June, 2010, for

a period of sixteen months. This misstates the facts. The Complaint, ¶9 states, in full: "9. On information and belief, the Defendants continued to occupy the real property until at least June, 2010." Paragraph 9 does not refer to nonpayment of rent, and Defendants' answer does not admit to non-payment of rent. In fact, Defendants' Proposed Fact 18 shows that Desert Oasis paid Debtor $5,600 by check dated April 30, 2008, and paid $2,800 for each month thereafter, except for one $50 reduction for early payment, from May 2008 through February 2009 and that $2,800 of the April 30, 2008 check could be applied to the March, 2009 payment. Plaintiff did not dispute Defendants' fact 18.

P-11. The combined monthly mortgages owed by the Debtor for the two mortgages on the Real Property totaled about $3,400 per month.

P-12. Debtor was insolvent during the time period from March 2009 through May 27, 2009, the date of the filing of the petition herein.

**DISCUSSION**

As set forth below, the Court finds that the Debtor and

Defendants were parties to an oral[3] contract[4].  Debtor breached

---

[3]New Mexico recognizes oral contracts.  E.g., N.M. Stat.
Ann. § 37-1-4 (1978)(Statute of limitations on oral contract is
four years.); N.M. Stat. Ann. § 57-23-2(D)(1978)("Franchise"
means a written or oral contract or agreement between a supplier
and a dealer.)

[4]    The New Mexico Court of Appeals has observed that,
except for statutory enactments that require a writing as a
precondition of enforceability, there is no difference between
oral and written contracts.  Talbot v. Roswell Hospital Corp.,
2005-NMCA-109, ¶ 13, 138 N.M. 189, 193, 118 P.3d 198 (Ct.App.),
cert. denied, 2005-NMCERT-8, 138 N.M. 328, 119 P.3d 1265 (2005)
(quoting Richard A. Lord, Williston on Contracts § 1:16, at 39
(1990)).   The parties to this action have not raised the statute
of frauds.  The Court finds, however, that even if they had the
outcome would not be different.
    The English statute of frauds was adopted in New Mexico as
part of the common law.  Beaver v. Brumlow, 2010-NMCA-033, ¶ 15,
148 N.M. 172, 175, 231 P.3d 628, 631 (Ct.App. 2010)(citing Ades
v. Supreme Lodge Order of Ahepa, 51 N.M. 164, 171, 181 P.2d 161,
165 (1947)).  The fourth section of that statute states, in part:
        No action shall be brought upon any contract or
        sale of lands, tenements, or hereditaments, or any
        interest in or concerning them ... unless the agreement
        upon which such action shall be brought, or some
        memorandum or note thereof, shall be in writing, signed
        by the party to be charged therewith, or by some person
        thereunto by him lawfully authorized.
Id. ¶ 16, 148 N.M. at 176, 231 P.3d at 632 (citing Childers v.
Talbott, 16 P. 275, 276, 4 N.M. (Gild.) 336, 340 (1888)).
        Notwithstanding its language, judicial
        construction of the statute of frauds has resulted in
        limiting its application in order to overcome the
        harshness and injustice of a literal and mechanical
        application of its terms.  McIntosh [v. Murphy, 52 Haw.
        29], 469 P.2d [177] at 180 [(1970)].  One well settled
        exception, recognized in New Mexico, is the doctrine of
        part performance.  Alvarez v. Alvarez, 72 N.M. 336,
        341, 383 P.2d 581, 584 (1963).
        "Where an oral contract not enforceable under the
        statute of frauds has been performed to such extent as
        to make it inequitable to deny effect thereto, equity
                                          (continued...)

Page  -15-

this contract before the bankruptcy filing[5].  This breach

_____

    [4](...continued)
    may consider the contract as removed from operation of
    the statute of frauds and decree specific performance."
    Id.
Id. ¶ 17, 148 N.M. at 176, 231 P.3d at 632.  See also Montoya v.
New Mexico Human Services Dept., 108 N.M. 263, 266, 771 P.2d 196,
199 (Ct.App. 1989)(An oral contract to convey real estate is
given effect when it has been performed to such an extent that it
would be inequitable to deny enforcement.); Shipp v. Thomas, 58
N.M. 190, 192, 269 P.2d 741, 742 (1954)(same)(Quoting Restatement
of Contracts § 197 (When a purchaser of real estate under an oral
contract makes improvements with assent of the vendor or takes
possession and pays a portion or all of the purchase price,
either party may enforce the contract.))


    [5]The parties devoted arguments in their briefs about whether
the lease/option contract was assumable by the trustee and/or
whether the contract was rejected as a matter of law.  Once a
contract is breached, performance is no longer due, see Gilmore
v. Duderstadt, 1998-NMCA-086, ¶ 22, 125 N.M. 330, 336, 961 P.2d
175, 181 (Ct.App. 1998), and the contract is no longer executory.
See Kopelman v. Halvajian (In re Triangle Laboratories, Inc.),
663 F.2d 463, 467 (3rd Cir. 1981)("As one authority has stated,
'(F)or Section 365 to apply, the contract or lease must be in
existence. If the contract or lease has expired by its own terms
or has been terminated prior to the commencement of the
bankruptcy case, then there is nothing left for the trustee to
assume or assign.' 2 Collier on Bankruptcy P 365.02 at 365-13
(15th ed. 1981)); In re Tornado Pizza, LLC, 431 B.R. 503, 510-11
(Bankr. D. Kan. 2010):
    [W]hen a franchise agreement has been terminated for
    cause prepetition and the termination process is
    complete with no right to cure when the petition is
    filed, the debtor does not have a property interest in
    the franchise on the date of filing and there is no
    executory contract to assume, even if on the date of
    filing the debtor remains in possession of the
    franchised business and continues to use the
    franchisor's trademark property. 2 Norton Bankr.L. &
    Pac. [sic] 3rd § 121:3.  See In re Durability Inc., 212
    F.3d 551, 557-58 (10th Cir. 2000)(whether life
    insurance policy was an assumable executory contract
    turns on the question of whether the contract
                            (continued...)

entitled the Defendants, as non-breaching parties, to damages and also excused any further performance on their part. The breach also terminated the contract making it non-executory. The Trustee could not assume the contract because 1) it was not executory and 2) he could not perform it. Defendants damages included the excess rents paid plus special damages. The defendants' damages exceed any claim the Trustee might have for rent. The doctrine of recoupment defeats the Trustee's claims. The case will be dismissed with prejudice.

**THE CONTRACT**

Under New Mexico law, "[t]he essential attributes of a contract include an offer, an acceptance, consideration, and mutual assent." Talbot v. Roswell Hospital Corp., 2005-NMCA-109, ¶ 14, 138 N.M. 189, 193, 118 P.3d 198 (Ct.App.), cert. denied,

---

[5](...continued)
terminated before bankruptcy was filed). The bankruptcy filing does not resuscitate the terminated rights. See Moody v. Amoco Oil Co., 734 F.2d 1200, 1213 (7th Cir. 1984).
See also In re Ecoventure Wiggins Pass, Ltd., 406 B.R. 131, 135 (Bankr. M.D. Fla. 2009):
> Where the sale contract was validly terminated before the bankruptcy case was filed, however, it is fundamental that the contract may not be resurrected and assumed by the debtor. In re Seven Hills, Inc., 403 B.R. [327] at 334-35 [(Bankr. D. N.J. 2009)]. See also In re Eagle Creek Subdivision, LLC, 397 B.R. 758, 761-63 (Bankr. E.D. N.C. 2008) (the debtor could not assume contracts to sell real estate that had been terminated prior to the filing of the bankruptcy Petition).

2005-NMCERT-8, 138 N.M. 328, 119 P.3d 1265 (2005)(Citation omitted.) "An offer is a communication of a willingness to enter a contract." Id. (citing UJI 13-805 NMRA.) An offer must also give the offeree the power to create a contract through acceptance. Id., ¶ 15. While the details of the offer and acceptance are absent in the record, the parties actually performed under their oral understandings for a considerable time period. This suggests that there was a willingness to enter a contract and an acceptance of an offer. See id. (Actual commencement of performance suggests willingness to make an offer and intent to contract).

Next,

> "A valid contract must possess mutuality of obligation. Mutuality means both sides must provide consideration." Bd. of Educ. v. James Hamilton Constr. Co., 119 N.M. 415, 420, 891 P.2d 556, 561 (Ct.App. 1994) (citation omitted). "Consideration consists of a promise to do something that a party is under no legal obligation to do or to forbear from doing something he has a legal right to do." Heye v. Am. Golf Corp., 2003-NMCA-138, ¶ 12, 134 N.M. 558, 80 P.3d 495; see Restatement (Second) of Contracts §§ 73, 75, at 179, 189 (1981).

Id., ¶ 16. Debtor gave possession of the property to the Defendants who in turn made payments to him and promised to make further payments to him. Consideration was present.

For an offer and acceptance to create a contract, there also must be an objective manifestation of mutual assent by the parties to the material terms of the contract. Pope v. The Gap, Inc., 1998 NMCA-103, ¶ 11, 125 N.M. 376, 379-80, 961 P.2d 1283,

1286-87 (Ct.App. 1998)(Citation omitted.) "Mutual assent is

based on objective evidence, not the private, undisclosed

thoughts of the parties." Id., ¶ 13, 125 N.M. at 380, 961 P.2d

at 1287. However,

> [t]he manifestations of the parties are operative in
> accordance with the meaning attached to them by one of
> the parties if
> (a) that party does not know of any different meaning
> attached by the other, and the other knows the meaning
> attached by the first party; or
> (b) that party has no reason to know of any different
> meaning attached by the other, and the other has reason
> to know the meaning attached by the first party.

Restatement (Second) of Contracts § 20(2)(1981). Defendants'

intent in this case is obvious. Defendants' intent was to enter

into a lease/purchase agreement, obtain possession first and a

deed to the property at some future time[6]. Defendants would make

payments (in an amount of approximately double the rent) and

would also upgrade the building to meet requirements for the

property to be used as a rehabilitation center. In exchange,

Plaintiff would lease the premises to Defendants until closing,

and part of the rent money would go directly to pay the mortgage

each month until the purchase was complete. From the record

---

[6]The record does not establish when the property was to be
conveyed. If a contract is silent as to the time of performance
it is still an enforceable contract. The Court just deems that
performed must be rendered in a reasonable time. Cowles v.
Hagerman, 15 N.M. 600, 602, 110 P. 843, 844 (1910). Compare
Padilla v. RRA, Inc., 1997-NMCA-104, ¶ 3, 124 N.M. 111, 115, 946
P.2d 1122, 1126 (Ct.App. 1997)(If parties have bargained for a
service but not agreed on payment terms, the court will find an
enforceable contract with "reasonable" payment terms.).

Page -19-

before the Court, the Court finds that there was mutual assent to Defendants' intentions. First, Defendants intended to lease and acquire the building. Defendants did not know any other meaning Debtor may have had (such as diverting money intended for the mortgage to his own use). If they had, they would not reasonably have entered into the contract. Debtor knew the meanings of Defendants' manifestations and their intent. See id. § (20)(2)(a). Second, Defendants had no reason to know of any other meaning ascribed to the terms by the Debtor. Debtor did have reason to know Defendants' intentions because they stated them. See id. § (20)(2)(b). In summary, the Court finds all of the elements of an enforceable contract. Furthermore, a simple application of common sense demonstrates that the parties had a contract. Defendants would not have paid double rent to the Debtor for no reason. The only credible explanation was that they were paying both rent and for an option.

Fact D-7 establishes that Debtor informed Tami Pacheco of the underlying mortgage, and that they agreed part of the rent money would go directly to pay the mortgage each month until the purchase was complete. The Court finds that this was a material term of the contract. Even if the parties had not specifically addressed the mortgage, however, the Court finds that payment of the mortgage until exercise of the option would be an implied covenant of the contract. See Continental Potash, Inc. v.

<u>Freeport-McMoran, Inc.</u>, 115 N.M. 690, 704, 858 P.2d 66, 80

(1993), <u>cert. denied</u>, 510 U.S. 1116 (1994):

> When it is clear, however, from the relevant parts
> of the contract taken together and considered with the
> facts and circumstances surrounding the execution of
> the agreement, that the obligation in question was
> within the contemplation of the parties or was
> necessary to effect their intention, then such
> obligation may be implied and enforced.

<u>See also</u> <u>Estate of Griego v. Reliance Standard Life Ins. Co.</u>,

2000-NMCA-022, ¶ 21, 128 N.M. 676, 681, 997 P.2d 150, 155

(Ct.App. 2000):

> A contract includes not only the promises set forth in
> express words, but, in addition, all such implied
> provisions as are indispensable to effectuate the
> intention of the parties and as arise from the language
> of the contract and the circumstances under which it
> was made.  <u>See</u> <u>Continental Potash, Inc. v.</u>
> <u>Freeport-McMoran, Inc.</u>, 115 N.M. 690, 704, 858 P.2d 66,
> 80 (1993).  A court may have to imply terms in a
> contract when to do otherwise would render the contract
> absurd and meaningless.  <u>See</u> <u>Gresham v. Massachusetts</u>
> <u>Mut. Life Ins. Co.</u>, 248 N.J.Super. 64, 590 A.2d 241,
> 245 (App.Div. 1991).

<u>Accord</u> Restatement (Second) of Contracts § 204 (1981):

> When the parties to a bargain sufficiently defined to
> be a contract have not agreed with respect to a term
> which is essential to a determination of their rights
> and duties, a term which is reasonable in the
> circumstances is supplied by the court.

If Debtor failed to make the payments in the interim, he would

have no title to convey when the option was eventually exercised.

**THE BREACH**

"Anticipatory breach" is defined in Black's Law Dictionary

(9th ed. 2009) as "A breach of contract caused by a party's

anticipatory repudiation, i.e., unequivocally indicating that the party will not perform when performance is due." The New Mexico courts have long applied the concept of anticipatory breach. <u>See</u> <u>Viramontes v. Fox</u>, 65 N.M. 275, 282, 335 P.2d 1071, 1075 (1959) ("A repudiation which may be treated as a breach justifying nonperformance by the other party must be a distinct, unequivocal, and absolute refusal to perform according to the terms of the agreement.")(Citations omitted.) In 1996 the New Mexico Court of Appeals adopted a refinement noted in the Restatement (Second) of Contracts § 250(b) (1981) that repudiation can also be accomplished through a "voluntary affirmative act" by a party that would make him "unable or apparently unable to perform" his commitments. <u>Hoggard v. City</u> <u>of Carlsbad</u>, 1996-NMCA-003, 121 N.M. 166, 168, 909 P.2d 726, 729 (Ct.App. 1995), <u>cert. denied</u>, 121 N.M. 119, 908 P.2d 1387 (1996). New Mexico courts also follow the Restatement (Second) approach that there is

> the firmly rooted principle of contract law that, in the case of a bilateral contract for an exchange of performances, one party's repudiation of its duty to perform discharges the other party's remaining duties of performance under the contract. <u>See</u> Restatement, <u>supra</u>, § 253(2) cmt. b; [4 Arthur L.] Corbin, [Corbin on Contracts] § 975, at 916 [(1951)].

In this case, Debtor failed to make the underlying mortgage payment in conformance with the contract. In early March, 2009 he admitted to Ms. Pacheco that he was living off the payments.

She also received additional notice from the mortgage company that Debtor was in default. This fully justified her conclusion that Debtor was "unable or apparently unable to perform" his commitments. See Hoggard, 121 N.M. at 168, 909 P.2d at 729. And, his failure to maintain the mortgage payments and confessed inability to do so (he was living off the money and had "spent it") breached a material term of the contract. Defendants were discharged from performing any further on the option portion of the contract as of March, 2009. Restatement § 253(2) cmt. b.

**DEFENDANTS' RIGHTS AS NON-BREACHING PARTIES**

The proof of claim deadline in this case ran in 2009. Defendants did not file a claim. Therefore, they may not seek affirmative relief against the Debtor or estate at this time. However, to the extent the Trustee or estate has a claim against the Defendants they may assert offset or recoupment notwithstanding their failure to file a proof of claim. Davidovich v. Welton (In re Davidovich), 901 F.2d 1533, 1539 (10th Cir. 1990).

> In New Mexico, when a seller breaches an executory contract to sell land, compensatory damages are usually measured by the "loss-of-bargain" rule, which is the difference between the contract price and the fair market value of the property. Conley v. Davidson, 35 N.M. 173, 291 P. 489 (1930). That is normally termed the "general damage" rule. We have said that some circumstances may warrant recovery of ascertainable special damages, either alone or as an additional part of the compensatory award. Aboud v. Adams, 84 N.M. 683, 507 P.2d 430 (1973); Adams v. Cox, 54 N.M. 256, 221 P.2d 555 (1950). However, those cases have not

Case 10-01166-t    Doc 23    Filed 09/07/12    Entered 09/07/12 10:44:37 Page 23 of 29

articulated how "circumstances" must differ from those
adequately redressed under the general damage formula.

     In land contract cases, the award of damages may
be measured as a direct (or general) damage, or a
consequential (or special) damage, or both.  D. Dobbs,
Remedies, § 3.2 (1973).  The distinction between
general and special damages arose in the touchstone
case of Hadley v. Baxendale, 9 Exch. 341, 156 Eng.Rep.
145 (1854).  Later cases freely translated the rule of
Hadley to mean that special damages may be recovered if
the loss was foreseeable by the breaching party at the
time of contracting.  D. Dobbs, Remedies, § 12.3 at 804
(1973).  Justice Holmes more critically analyzed the
foreseeability of damages rule to include a "tacit
agreement" by the defendant to respond in damages for
the particular damages understood to be likely in the
event of breach.  Globe Refining Co. v. Landa Cotton
Oil Co., 190 U.S. 540, 23 S.Ct. 754, 47 L.Ed. 1171
(1903).  It is this view of the kind of "certain
circumstances" leading to consequential or special
damages to which we alluded in Aboud and Adams.
Specifically, as Professor Dobbs points out, special
damages may be allowed for items of loss more or less
peculiar to the plaintiff, which may not be expected to
occur regularly to other plaintiffs in similar
circumstances, and are a likely loss within the
contemplation of the parties at the time of
contracting.  D. Dobbs, Remedies, §§ 3.2, 12.3 (1973).
Stated another way, special provable damages flow from
the disappointment of a special purpose for the subject
matter of the contract or from unusual circumstances,
either or both of which were known to the parties when
they contracted.  In such a case, the amount permitted
under the general damage formula, alone, clearly will
be either inadequate or nonexistent.

Wall v. Pate, 104 N.M. 1, 2, 715 P.2d 449, 450 (1986).

     There is nothing in the record about loss of bargain

damages, if any.  Defendants' other damages included the amounts

paid for the option plus special damages.  Defendants paid $2,800

monthly for rent and the option to purchase.  Undisputed Fact D-8

Page -24-

establishes that the fair market rental value of the property was about $1,400.

Defendants paid $5,800 on May 1, 2008 for two months of rent plus a $200 water deposit. They then paid $2,800 per month[7] for the months of June, 2008 to February, 2009, for a total of $25,200 in monthly payments and a grand total of $31,000. Defendants were in possession for the ten months from May 2008 to February 2009 under the lease/option. The rent attributable to these ten months was $14,000; the $17,000 attributable to the option were damages caused by Debtor's breach of the contract.

The record in this case also establishes that special damages are appropriate. Debtor knew Defendants intended to use the property as a substance abuse residential rehabilitation facility. Salcido Affidavit, doc 21-1, ¶ 4. Debtor was also aware that Desert Oasis installed a water suppression system. Id., ¶ 7. New Mexico statutes impose "minimum requirements for the operation and maintenance of buildings and structures necessary to reasonably protect life and property from the hazards created by fire, explosion, and similar emergencies." N.M. Code R. § 10.25.5.6 (2007). See also N.M. Stat. Ann. § 59A-52-15(A) (authorizing the state fire board to adopt regulations for fire prevention and safe conduct of public occupancies.) See

---

[7]Ignoring the $50 concession noted above.

Case 10-01166-t   Doc 23   Filed 09/07/12   Entered 09/07/12 10:44:37 Page 25 of 29

also Restatement (Second) of Property, Landlord & Tenant, § 10.2, Damages (1977):

> If the tenant is entitled to recover damages from the
> landlord for his failure to fulfill his obligations
> under the lease, absent a valid agreement as to the
> measure of damages, damages may include one or more of
> the following items as may be appropriate so long as no
> double recovery is involved:
> ...
> (2) the loss sustained by the tenant due to reasonable
> expenditures made by the tenant before the landlord's
> default which the landlord at the time the lease was
> made could reasonably have foreseen would be made by
> the tenant;

Installation of the fire system was foreseeable and within the contemplation of the parties. The requirement is set out in black and white in the state statutes and rules. The Court finds that this cost, $9,890, should be awarded as special damages. Defendants therefore had a total claim of $26,890 for Debtor's breach of contract.

After the breach, Defendants became holdover tenants. Economy Rentals, Inc. v. Garcia, 112 N.M. 748, 761, 819 P.2d 1306, 1319 (1991). As holdover tenants, Defendants were obligated to pay the reasonable rental value for the time they held over. Id. The Court may properly use the rental payment in the contract or lease to determine the reasonable rental value. Id. Defendants remained in possession of the property until June, 2010. Therefore, sixteen months of rent, a total of $22,400 would be due from them as holdover tenants.

Case 10-01166-t   Doc 23   Filed 09/07/12   Entered 09/07/12 10:44:37 Page 26 of 29

**RECOUPMENT**

Black's law dictionary defines "Recoupment" as, among other things, a "reduction of a plaintiff's damages because of a demand by the defendant arising out of the same transaction." Blacks Law Dictionary (9th ed. 2009). In some respects recoupment resembles "setoff." "The right of setoff (also called 'offset') allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B when B owes A.' <u>Studley v. Boylston Nat. Bank</u>, 229 U.S. 523, 528, 33 S.Ct. 806, 808, 57 L.Ed. 1313 (1913)." <u>Citizens Bank of Maryland v. Strumpf</u>, 516 U.S. 16, 18 (1995).

The Bankruptcy Code does not create a federal right of setoff, but Section 553(a) provides that, with certain exceptions, whatever right of setoff exists is preserved in bankruptcy. <u>Id.</u> The main exception is that Section 553(a) requires that the mutual debts to be offset both be owing before the commencement of the case. In other words, a creditor may offset a prepetition claim by the debtor against the creditor only against a prepetition claim by the creditor against the debtor.

Recoupment, on the other hand, does not limit the parties' rights to prepetition transactions only. Rather,

> "Recoupment" is an equitable doctrine in bankruptcy that allows one party to a transaction to withhold funds due another party where the debts arise out of the same transaction. <u>Conoco, Inc. v. Styler</u>

Page -27-

> (In re Peterson Distributing, Inc.), 82 F.3d 956, 959
> (10th Cir. 1996). In other words, the doctrine "allows
> a creditor to recover a pre-petition debt out of
> payments owed to the debtor post-petition." City of
> Fort Collins v. Gonzales (In re Gonzales), 298 B.R. 771
> (Bankr. D. Colo. 2003)(citations omitted). The
> doctrine is to be narrowly construed because its effect
> is to allow one creditor to attain priority over other
> creditors. Peterson Distributing, 82 F.3d at 960.

Beaumont v. Department of Veteran Affairs, 586 F.3d 776, 780

(10th Cir. 2009). Therefore, application of the recoupment

doctrine depends on whether the obligations arose from the "same

transaction." Id.

The Court finds that the obligations of both the Debtor and

the Defendants arose from the "same transaction." Plaintiff's

claim arises out of Defendants' obligations to pay a fair rental

value under the lease/option contract. Defendants' claims arise

out of the breach of the same lease/option contract.

**CONCLUSION**

The defendants' damages exceed any claim the Trustee might

have for rent. The doctrine of recoupment defeats the Trustee's

claims. This adversary proceeding will be dismissed with

prejudice.

Honorable James S. Starzynski
United States Bankruptcy Judge


Date entered on docket: September 7, 2012

Copies to:

Bonnie Bassan Gandarilla
Moore, Berkson & Gandarilla, P.C.
PO Box 7459
Albuquerque, NM 87194

George M. Moore
Moore, Berkson & Gandarilla, P.C.
PO Box 7459
Albuquerque, NM 87194

Chris W Pierce
Hunt & Davis, P.C.
2632 Mesilla St. NE
Albuquerque, NM 87110